**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**NORTHERN DIVISION**

| | |
|---|---|
| **WESTPORT INSURANCE CORPORATION,** | |
| **Plaintiffs,** | **MEMORANDUM DECISION AND ORDER** |
| **vs.** | |
| **LUKE H. ONG, individually, CYNTHIA CHAR ONG, individually, LUKE H. ONG, P.C., a Utah corporation, and SWAINS, INC., a Utah corporation,** | **Case No.  1:07CV10 DAK** |
| **Defendants.** | |

This matter is before the court on (1) Westport's Motion for Summary Judgment  (2) Ongs's Cross-Motion for Summary Judgment, and (3) Ongs's Motion for Certification of Issue to State Supreme Court.  A hearing on the motions was held on February 13, 2007.   At the hearing, Plaintiff Westport Insurance Corporation ("Westport") was represented by Richard F. Ensor.   Defendants Luke H. Ong, Cynthia Char Ong, and Luke H. Ong, PC (collectively, the "Ongs") were represented by Karra Porter.  Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties.  Since taking the matter under advisement, the court has further considered the law and facts relating to the motions.  Now being fully advised, the court renders the following Memorandum Decision and Order.

## I.  STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56c.   In reviewing the factual record, the court construes all facts and makes reasonable inferences in the light most favorable to the non-moving party.  *See Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir.1998).

## II.  BACKGROUND

In this insurance coverage declaratory judgment action, Westport seeks determinations that it had no duty to defend or indemnify Luke H. Ong, Cynthia Char Ong, and Luke H. Ong, P.C. with respect to a lawsuit filed against them by Swains, Inc. ("Swains").   Accordingly, Westport seeks reimbursement of the $100,000 payment it made to the Ongs.  The Ongs, on the other hand, seek a determination that, among other things, (1) Westport cannot maintain a claim for reimbursement of defense costs absent an express provision in its policy permitting it to do so, (2) Westport owed a duty to defend them and therefore is not entitled to recoup defense costs, and (3) even if Westport did not owe them a duty to defend, there was no meeting of the minds sufficient to create an implied-in-fact contract that if they accepted the payment, Westport could later seek to recoup the payment.

In the underlying action, Swains principally alleged that in 2001, Mrs. Ong, an accountant (or paralegal, as claimed by the Ongs) employed by the law firm of Luke Ong, P.C., committed accounting malpractice and breached fiduciary duties in preparing Swains's taxes by filing the wrong tax form, thereby depriving Swains of hundreds of thousands of dollars in tax refunds.

In May 2003, Westport issued a lawyers professional liability policy to Luke Ong and his

law firm, Luke H. Ong, P.C.   When the Ongs tendered the underlying action, Westport denied coverage based primarily on an exclusion that precludes coverage for a claim if, prior to the effective date of the policy, an insured could have reasonably foreseen that a claim might be made.[1]

According to Westport, clear and undisputed evidence establishes that prior to the Westport policy's effective date of May 8, 2003, the Ongs knew, or at a minimum could have "reasonably foreseen," that a claim would be made.   Specifically, Westport claims that the Ongs knew in early 2001 that the IRS had rejected both the initial filing of the wrong tax form and the subsequent late filing of the correct form.   Second, according to Westport, the Ongs were informed in early 2002 that Swains intended to recover from the Ongs any refunds that were lost.   Third, in 2002, Swains's counsel specifically advised Mrs. Ong to notify her malpractice carrier. Fourth, in 2002, the Ongs met with Swains's counsel to discuss the matter.   Fifth, in 2002, the Ongs paid for a tax attorney to appeal the IRS determination.   Westport contends therefore that it properly denied coverage based on the prior knowledge exclusion.[2]

---

[1]  The policy provides that it does not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from:

> any act, error, omission, circumstance or PERSONAL INJURY occurring prior to the effective date of this POLICY if any INSURED at the effective date knew or could have reasonably foreseen that such act, error, omission, circumstance or PERSONAL INJURY might be the basis of a CLAIM.

[2]  Westport makes additional arguments to support its denial of coverage, including that (1) the policy applies only to claims against lawyers involving legal services and therefore, there has been no "Wrongful Act" under the policy because the problem here involved accounting–not legal–services; and (2) Mrs. Ong is not an insured under the policy because she is not an attorney and therefore not entitled to coverage.   The court finds no merit to these arguments.

Westport claims that no genuine issues of material fact exist, and the terms of the policy at issue are clear and unambiguous and therefore Westport is entitled to judgment as a matter of law that: (1) Westport has no duty to defend or indemnify Luke H. Ong, Cynthia Char Ong, or Luke H. Ong, P.C. with respect to Swains's lawsuit against them, and (2) Westport is entitled to recover the amounts paid to the Ongs under the policy.

The Ongs, on the other hand, claim that they are entitled to summary judgment because they had no reason to think that this problem would ever amount to a claim because the Swains's attorney advised them that everything had been worked out.  Therefore, they contend, Westport had a duty to defend them.[3]  At the very least, they argue, there is a question of fact as to this issue.   Moreover, whether or not there was a duty to defend, the Ongs argue that it was not clear that Westport paid the $100,000 under a reservation of rights, as there was no meeting of the minds regarding that agreement.  They claim that the payment was made four months later, pursuant to a separate agreement reached between English and Lund, and with no reference to any alleged reservation of rights.   Finally, they seek a determination that insurers may not, as a matter of law, seek reimbursement of defense costs even under a reservation of rights.

### III.  DISCUSSION

The court finds that Westport did not owe the Ongs a duty to defend.  Westport has demonstrated that no genuine issue of fact exists as to the applicability of the prior knowledge exclusion.   A duty to defend arises solely from a contract.  *Fire Ins. Exch. v. Estate of Therkelsen*, 27 P.3d 555, 560 (Utah 2001).  Accordingly, the method for analyzing whether an

---

[3]  As explained more fully below, the Ongs have no *admissible* evidence to demonstrate that they had reason to believe that this issue had been resolved.

insurer has a defense obligation "hinges on the particular contractual terms of the insurance policy defining the scope of the duty to defend[.]" *Id.*   Where the insurance policy states that the insurer has a duty to  defend  *covered* claims, extrinsic evidence should be considered to determine the insurer's defense obligation, if any.  *Id.*

Westport argues that the prior knowledge exclusion clearly and unambiguously precludes coverage for the Swains's claim because, prior to the Policy's effective date, Mr. Ong should have reasonably foreseen that a claim would be made.   The Policy provides that it does not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from:

> any act, error, omission, circumstance or PERSONAL INJURY occurring prior to the effective date of this POLICY if any INSURED at the effective date knew or could have reasonably foreseen that such act, error, omission, circumstance or PERSONAL INJURY might be the basis of a CLAIM. [4]

The court recognizes that the Utah Supreme Court has stated that "[w]here factual questions render coverage uncertain . . . the insurer must defend until those uncertainties can be resolved against coverage. *United States Fidelity & Guar. Co. v. Sandt,* 854 P.2d 519, 521 (Utah 1993) (internal quotation marks omitted); *see also Farmers Ins. Exch. v. Versaw,* 2004 UT 73, ¶

---

[4]  Defendants also argue that the renewal application for the Policy states the exclusion regarding propr knowledge as follows:

> All claims will be excluded that result from any acts, circumstances, or situations known prior to the inception of coverage being applied for, *that could reasonably be expected to result in a claim*.  (emphasis added)

Defendants then argue that when a policy contains materially different provisions regarding the same subject, an ambiguity is inherently created, and the insured is entitled to have his rights determined under the language most favorable to him.   Here, the court finds that even if the language from the renewal application is used, Westport still had no duty to defend.

24, 99 P.3d 796.  "When in doubt, defend."  *Sandt,* 854 P.2d 519, 521 (Utah 1993) (quoting

*Appleman on Insurance Law and Practice* § 136.2[C] (2d ed.2006)).   In addition, the Utah

Supreme Court has also stated that "insurance policies should be construed liberally in favor of

the insured and their beneficiaries so as to promote and not defeat the purposes of insurance."  *Id.*

Nevertheless, the court finds that Westport properly concluded, after investigating and

resolving the factual uncertainties, that it had no duty to defend.   Even now, in the instant

motions, the Ongs have not created a genuine issue of disputed fact about whether they knew or

could have reasonably foreseen that a claim might be made.  Under an objective standard, there is

no dispute that the Ongs knew or could have reasonably foreseen that a claim might be made.   If

the Ongs had proffered some admissible evidence regarding the alleged hearsay statement from

Swains's attorney that no claim would arise, the court's determination likely would be different.

The Ongs, however, failed to provide any affidavit or deposition testimony from the Ongs's

lawyer, Swains's lawyer, or even the Ongs themselves.   Nor is any correspondence between the

Ongs's lawyer and Swains's lawyer provided to support this contention.   Instead, the Ongs cite

to one letter, dated February 18, 2004, from the Ongs to Westport, containing self-serving

statements allegedly recounting conversations between the Ongs and the Ongs's lawyer.  This

letter is not sufficient to create a disputed fact on this issue.[5]   Thus, the prior knowledge

exclusion eliminated any duty on the part of Westport to defend the Ongs against Swains's

---

[5]  In addition to arguing that disputed facts exist on this issue, they also contend that Westport had a duty "to defend any CLAIM for LOSS against any INSURED *covered by Insuring Agreement I.A."*  They then argue that based solely on the language of  Insuring Agreement I.A., and without reference to the rest of the Policy, Westport had a duty to defend. The court finds no merit to this argument.

lawsuit.

Having determined that Westport had no duty to defend the Ongs, the court must now consider whether Westport is entitled to recoup its payment to the Ongs.  Whether an insurer may recoup defense costs under a reservation of rights, however, has never been addressed by the Utah Supreme Court or the Utah Court of Appeals.   This issue is controlling in this case because if such a reservation of rights to recoup defense costs is not permitted under Utah law, Westport is not entitled to the $100,000 payment, notwithstanding the court's finding that it did not have a duty to defend.   If, on the other hand, such a reservation of rights is permissible under Utah law, then the court finds that a question of fact exists as to whether there was a meeting of the minds as to the Ongs accepted the policy limit payment subject to a reservation of rights to later recoup the payment.   In that situation, the question would have to be decided by a jury.

Westport points out that numerous courts recognize an insurer's right to reimbursement of defense fees paid where it is determined that the insurer had no duty to defend.  Indeed, many cases refer to this holding as the majority position.   *See*, *e.g.*,  *St. Paul Fire & Marine Ins. Co. v. Compaq*, 457 F.3d 766, 772 (8th Cir. 2006) (applying Texas law); *United National Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914, 921 (6th Cir. 2002) (applying Ohio law); *Envirotech Industries, Inc. v. United Capitol Ins.*, 141 F.3d 1175 (9th Cir. 1998) (unpublished decision); *Resure, Inc. v. Chem. Distributors, Inc.*, 927 F. Supp. 190, 194 (M.D.La. 1996) (applying New Mexico law); *St. Paul Mercury Ins. Co. v. Medical Lab. Network, Inc.*, 690 F. Supp. 901, 904 (C.D.Cal. 1988); *Jim Black & Assoc. v. Transcontinental Ins. Co.*, 932 So.2d 516, 518 (Fla.App. 2 Dist. 2006); *Travelers Cas. and Sur. Co. v. Ribi Immunochem*, 108 P.3d 469, 480 (Mont. 2005); *Security Ins.*

*Co. of Hartford v. Lumbermens Mut. Cas. Co.*, 826 A.2d 107, 125 (Conn. 2003); *Buss v. The Superior Court of Los Angeles County*, 939 P.2d 766, 778 (Cal. 1997).

Westport argues that it is a fundamental tenet of insurance and contract law that an insurer has no duty to defend its insured where the claims are not even potentially covered under the policy.  Accordingly, it argues, where an insurer pays defense costs and a court subsequently determines that it had no duty to defend, it makes perfect sense that the insurer should recover the fees it paid unnecessarily.  The insurer has not been paid premiums to assume the risk for uncovered claims, and the insured did not pay to transfer these risks.   Therefore, according to Westport, reimbursement appropriately restores the parties to the circumstances they anticipated when they entered into the contract, and in the absence of a right of reimbursement, the insurer is unfairly harmed and the insured unjustly enriched.

The Ongs, on the other hand, point out that while the above cases may reflect the majority position, the most recent decisions are to the contrary.  The seminal case for the "minority" position is *General Agents Insurance Co. Of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092 (Ill. 2005).   In *General Agents*, the court relied on a case from the District of Wyoming, among others, which pointed out the problem with allowing an insurer to reserve the right to seek reimbursement of defense costs:

> A reservation of rights letter does not create a contract allowing an insurer to recoup defense costs from its insureds.   The question as to whether there is a duty to defend an insured is a difficult one, but because that is the business of an insurance carrier, it is the insurance carrier's duty to make that decision. If an insurance carrier believes that no coverage exists, then it should deny its insured a defense at the beginning instead of defending and later attempting to recoup from its insured the costs of defending the underlying action. Where the insurance carrier is uncertain over insurance coverage for the underlying claim, the proper

> course is for the insurance carrier to tender a defense and seek a declaratory
> judgment as to coverage under the policy. However, to allow the insurer to force
> the insured into choosing between seeking a defense under the policy, and run the
> potential risk of having to pay for this defense if it is subsequently determined that
> no duty to defend existed, or giving up all meritorious claims that a duty to defend
> exists, places the insured in the position of making a Hobson's choice.
> Furthermore, endorsing such conduct is tantamount to allowing the insurer to
> extract a unilateral amendment to the insurance contract. If this became common
> practice, the insurance industry might extract coercive arrangements from their
> insureds, destroying the concept of liability and litigation insurance.

*Id.* at162.    The court went on to state that "an implied agreement effectively places the insured

in the position of making a Hobson's choice between accepting the insurer's additional conditions

on its defense or losing its right to a defense from the insurer." *Id.* at 163.    The *General Agents*

court also pointed out that the United States Court of Appeals for the Third Circuit, applying

Pennsylvania law, also has ruled that an insurer cannot recover defense costs even when it

defends under a reservation of rights to recover defense costs if it is later determined there is no

coverage.  *Id.*  (referring to *Terra Nova Insurance Co. v. 900 Bar, Inc.,* 887 F.2d 1213 (3d

Cir.1989)).  The Third Circuit court reasoned that:

> A rule permitting such recovery would be inconsistent with the legal principles
> that induce an insurer's offer to defend under reservation of rights. Faced with
> uncertainty as to its duty to indemnify, an insurer offers a defense under
> reservation of rights to avoid the risks that an inept or lackadaisical defense of the
> underlying action may expose it to if it turns out there is a duty to indemnify. At
> the same time, the insurer wishes to preserve its right to contest the duty to
> indemnify if the defense is unsuccessful. Thus, such an offer is made at least as
> much for the insurer's own benefit as for the insured's. If the insurer could recover
> defense costs, the insured would be required to pay for the insurer's action in
> protecting itself against the estoppel to deny coverage that would be implied if it
> undertook the defense without reservation.

*Id.*  (quoting *Terra Nova Insurance Co.,* 887 F.2d at 1219-20).

The *General Agents* court determined that when an insurer tenders a defense or pays

defense costs pursuant to a reservation of rights, the insurer is protecting itself at least as much as

it is protecting its insured.  *Id.* at 163-64.   It went on to state:

> Thus, we cannot say that an insured is unjustly enriched when its insurer tenders a
> defense in order to protect its own interests, even if it is later determined that the
> insurer did not owe a defense.   Certainly, if an insurer wishes to retain its right to
> seek reimbursement of defense costs in the event it later is determined that the
> underlying claim is not covered by the policy, the insurer is free to include such a
> term in its insurance contract.   Absent such a provision in the policy, however, an
> insurer cannot later attempt to amend the policy by including the right to
> reimbursement in its reservation of rights letter.

*Id. at 164.*   The United States District Court for the District of Minnesota also recently agreed

with the *General Agents* court*.   See Westchester Fire Insur. Co. v. Wallerich*, 527 F. Supp. 2d

896 (D. Minn. September 25, 2007).

In this case, the Ongs urge the court to adopt the reasoning of *General Agents.*   Because

this important issue has never been addressed by Utah courts and, as demonstrated above, there is

a significant split among courts across the country, and because the issue is controlling in this

case, the court will certify this question to the Utah Supreme Court.   Accordingly, the court

directs the Ongs to file, by no later than May 2, 2008,  a proposed Order Certifying Question to

the Utah Supreme Court.  The proposed Order should comply with Rule 41 of the Utah Rules of

Appellate Procedure.[6]

The Utah Supreme Court's decision, if the Court accepts the question, will then dictate

the next step in this litigation.   If the Utah Supreme Court finds that an insurance company is not

permitted to recoup its defense costs under a reservation of rights absent an express policy

---

[6]  The parties are encouraged to stipulate to the proposed Order.   If a stipulation is not
possible, however, Plaintiff may file an Objection to the proposed Order by no later than May 9,
2008.

provision permitting it to do so, then this court will enter Judgment in favor of the Ongs.   If, however, the Utah Supreme Court finds that it is permissible for an insurance company to recoup its defense costs under a reservation of rights absent an express policy provision permitting it to do so, then this court will set a jury trial on the issue of whether there was a meeting of the minds as to whether Westport paid the $100,000 subject to a reservation of rights, as the court concludes that there is a factual dispute as to this issue.

## IV.  CONCLUSION

Accordingly, IT IS HEREBY ORDERED that :

1.  The Ongs's Motion for Certification of Issue to State Supreme Court [docket # 20] is GRANTED, and the Ongs are directed to submit a proposed Order Certifying Question to the Utah Supreme Court by no later than May 2, 2008;[7]

2.  Westport's Motion for Summary Judgment [docket # 15] is GRANTED in part and DENIED in part.   The court finds that Westport did not owe the Ongs a duty to defend, but the court DENIES Westport's request for reimbursement of its defense costs pending the Utah Supreme Court's ruling on whether the request for reimbursement is permissible under Utah law.

3.  Ongs's Cross-Motion for Summary Judgment [docket # 17] is DENIED.

4.  The Clerk of Court is directed to administratively close this case until the Utah Supreme Court notifies this court of its decision.   At that point, the court will reopen the case and take the appropriate action, as discussed above.

---

[7] Defendants should also email the proposed Order in Word or WordPerfect format to "utdecf_kimball@utd.uscourts.gov"

DATED this 28th day of March, 2008.

BY THE COURT:

DALE A. KIMBALL
United States District Judge